
Versión para imprimir

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Constructora Estelar, S.E. y Otros<br><br>        Recurridos<br><br>                v.<br><br>Autoridad de Edificios Públicos Y Otros<br><br>        Peticionarios | Certiorari<br><br>2011 TSPR 139<br><br>183 DPR ____ |

Número del Caso: CC    - 2009 - 259
                Cons. CC    - 2009 - 267


Fecha: 28 de septiembre de 2011


Tribunal de Apelaciones:

Región de San Juan, Panel II


Jueza Ponente:
Hon. Carlos A. Cabán García


Abogado de la Parte Peticionaria:

Lcdo. Enrique R. Adames Soto
Lcdo. Oscar M. González Rivera
Lcda. Vivian Rodríguez Ortiz


Abogado de la Parte Recurrida:

Lcdo. Edilberto Berríos Pérez

Abogado de Seaboard  Surety Co.

Lcdo. Alfredo Fernández Martínez


Materia:      Laudo de Arbitraje

Este documento constituye un documento oficial del Tribunal Supremo que está     sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Constructora Estelar, S.E. y Otros Recurridos v. Autoridad de Edificios Públicos y Otros Peticionarios | CC-2009-259 | Certiorari |
|---|---|---|
| Constructora Estelar Peticionario v. Autoridad de Edificios Públicos y Otros Recurridos | Cons. CC-2009-267 | |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 28 de septiembre de 2011.

Nos corresponde atender unas controversias relacionadas con la Ley para Autorizar la Celebración de Convenios de Arbitraje en Puerto Rico, Ley Núm. 376 de 8 de mayo de 1951, 32 L.P.R.A. § 3201, *et seq.* (Ley de Arbitraje). Específicamente, si la prórroga a un término establecido para emitir un laudo de arbitraje debe ser por escrito a tenor con lo dispuesto en el Art. 14 de la Ley de Arbitraje, 32 L.P.R.A. § 3214. Además, debemos establecer si un decreto emitido transcurrido el plazo dispuesto es automáticamente inválido. Igualmente, debemos

entender la facultad del Tribunal de Primera Instancia para revisar un laudo en el que sólo se sometió a arbitraje la determinación sobre la validez de una declaración de incumplimiento contractual.

Luego de un análisis de la doctrina atinente, concluimos que el Art. 14 de la Ley de Arbitraje, *supra,* no aplica cuando las partes acordaron un término para emitir un laudo de arbitraje, por lo que no es un requisito que su prórroga conste por escrito. De igual forma, ultimamos que el decreto formulado en exceso al referido periodo no es automáticamente nulo. A su vez, enmarcamos la facultad del Tribunal de Primera Instancia para revisar un laudo de arbitraje.

I

Un trasfondo de los hechos medulares ante nuestra consideración refleja que el 12 de marzo de 1992 la Autoridad de Vivienda Pública (AVP) y la Autoridad de Edificios Públicos (AEP) acordaron que la última administraría la modernización de ciertos residenciales públicos conforme a un programa general de mejoras de la Administración de Vivienda Federal (HUD).[1] Como parte del referido programa, se celebró una subasta para el proyecto conocido como "Modernización del Residencial Ernesto Ramos Antonini", Segunda Fase. El proyecto consistía de la modernización de 384 unidades de vivienda en 38 edificios

---

[1]Los residenciales públicos en cuestión, son: Ernesto Ramos Antonini, Manuel A. Pérez, Torres de la Sabana, Margaritas II, Margaritas III y Perla del Caribe.

y trabajos de mejoras a las calles y áreas comunales tales como edificio de Head Start, centro comunal, parque de pelotas y gradas. La subasta fue adjudicada a favor de la Constructora Estelar, S.E. (Constructora Estelar), por lo que el 23 de julio de 1993 ésta, la AVP y la AEP otorgaron el respectivo contrato.[2] Seaboard Surety Corp. (Seaboard Surety) emitió la fianza de pago y cumplimiento.

El 15 de noviembre de 1995 las partes se declararon mutuamente en incumplimiento sustancial (default). En esencia, la AEP y la AVP entendieron que Constructora Estelar retrasó la obra por no contar con personal y materiales suficientes, y poseer una pobre situación económica. Por su parte, Constructora Estelar adujo, entre otras, que la AEP y la AVP no entregaban nuevos edificios para trabajar, no recibían edificios completados, exigían labores que no fueron contratadas, paralizaban labores y no pagaban las órdenes de cambio. Como consecuencia de ello, la AVP y la AEP requirieron a Seaboard Surety la asunción y terminación de las obras. El 7 de febrero de 1996 todas las partes suscribieron un contrato denominado *Takeover Agreement* para que Seaboard Surety completara el proyecto de modernización, a tenor con los términos del

---

[2]La AVP compareció como dueña de la obra, la AEP como administradora de los contratos de construcción y Constructora Estelar como contratista general. El contrato original fue adjudicado por $11,515,000. La remodelación inició el 2 de agosto de 1993 y la fecha de terminación original estaba pautada para el 26 de septiembre de 1995. Véase, Apéndice, CC-2009-09-259, a la pág. 287.

contrato originalmente suscrito entre AVP, AEP y Constructora Estelar.

Como parte del *Takeover Agreement* relacionado con el residencial Ernesto Ramos Antonini, las partes pactaron que cualquier causa de acción por daños causados en virtud del contrato suscrito por éstas no sería sometido a arbitraje y podría ser iniciado ante los tribunales.[3] Por el contrario, la única controversia a ser dilucidada ante un panel de árbitros sería si fue correcta la declaración de incumplimiento emitida por la AVP y la AEP.[4]

En lo pertinente al arbitraje, el *Takeover Agreement* dispone:

> [n]otwithstanding contractual provisions under the General Conditions, particularly Article 15.2 (among others) and the limitations therein contained as to scope of any arbitration, the parties except as otherwise provided **hereby agree and covenant to determine the propriety of the default issue and submit said disputes to arbitration** within thirty (30) days after the execution of this Agreement. This provision is to

---

[3] El *Takeover Agreement* establece que:

Notwithstanding any other provision of this Agreement, no cause of action that either party to the construction contract might have against the other for damages caused by nonperformance of contract shall not be submitted to arbitration. The party to the construction contract which feels entitled to such cause of action shall be authorized to initiate such action in any court of competent jurisdiction.

Véase, *Takeover Agreement*, Apéndice, CC-2009-259, a la pág. 172.

[4] El *Takeover Agreement* dispone que: "the parties except as otherwise provided hereby agree and covenant to determine the propriety of the default issue and submit said disputes to arbitration". Véase, *Takeover Agreement*, Apéndice, CC-2009-259, a la pág. 171.

be construed as a "formal submission agreement". It shall not be necessary, indispensable or precondition that the architect issues any opinion or decision prior to commencement of arbitration proceedings. The final decision of the arbitration panel shall be binding on all parties who participate. The arbitrators shall be three (3) and will be selected under the provision of Article 15.2 of the Contractual General Conditions. **The arbitrators shall decide the disputes submitted to them pursuant to the Laws of Puerto Rico and the decision shall conform to Law. The rules of the American Arbitration Association (AAA) shall not be applicable, except to supplement areas of controversy or doubt, in such event the applicable rules of the AAA shall be those that will become effective March 31, 1996.** The parties to the arbitration shall be entitled to discovery in a limited fashion, unless mutually agreed otherwise; namely each party shall be entitled to take a maximum of three (3) oral depositions per project; the parties shall exchange all relevant documents and shall be entitled to inspection of documents. Arbitrators shall admit into evidence only relevant documents, relevant regarding the issues submitted for decision and a limited periphery thereof.

Final hearing shall be held within 90 days from date hereof and unless mutually agreed the maximum hearing period shall be twelve full working days, with time allocated equally to each party, the time on cross examination shall be considered as time consumed by the party propounding the questions. All evidence that makes reference to numbers, figures or computations be it time, money, cost, damages, change orders, certifications or similar matter shall be submitted trough summaries. **The arbitrators shall issue their written decision within thirty (30) days from the date when the hearings close. The arbitrators shall issue their decision with specific findings of fact and conclusions of law. The final decision of the arbitration panel shall be final, except as it may be challenged, questioned or attacked under the provisions of the Laws of Puerto Rico and this submission agreement; the final findings of fact and conclusions of law shall be binding on all parties to the arbitration for all legal purposes.** Nothing considered as having been resolved for or against either party and shall be

considered as all rights and prerogatives related thereto having been fully reserved. [Énfasis nuestro]

A la luz de lo acordado, el 15 de noviembre de 1996 Constructora Estelar y otros demandaron en daños y perjuicios a la AVP, AEP y Seaboard Surety.[5] A su vez, comenzó entre las partes el proceso de arbitraje suscrito en el *Takeover Agreement*.[6]

El proceso de arbitraje comenzó con la selección del panel de árbitros compuesto por el Ingeniero Jorge Guillermety, y los licenciados Antonio Moreda González y Antonio Corretjer Piquer.[7]

---

[5]Posteriormente, el 5 de marzo de 1997 Constructora Estelar presentó una demanda enmendada que comprende causas de acción de alegaciones de culpa, negligencia, craso menosprecio al daño, interferencia con relaciones contractuales, ausencia de buena fe y falta de pago. La AEP y la AVP solicitaron la desestimación de la demanda al alegar que las referidas reclamaciones eran contractuales y debían ser dilucidadas por arbitraje. El foro de instancia denegó desestimar la acción instada por Constructora Estelar. Ello fue objeto de estudio por el Tribunal de Apelaciones en el recurso KLCE9701042 que fue denegado mediante resolución de 8 de enero de 1998.

[6]El *Takeover Agreement* establecía que los procedimientos se celebrarían en un término de noventa (90) días. Originalmente, la AEP y AVP cuestionaron la jurisdicción del panel de árbitros al aducir que el término para celebrar la vista final culminó. Ante ello, el panel de árbitros paralizó los procedimientos en espera de que el Tribunal de Primera Instancia atendiera el planteamiento jurisdiccional. El foro primario determinó que el panel de árbitros tenía jurisdicción. La AEP y AVP acudieron ante el Tribunal de Apelaciones, KLCE199900277 que denegó el recurso mediante resolución de 14 de mayo de 1999. El Tribunal de Apelaciones concluyó que la conducta de la AEP y AVP era inconsistente con el procedimiento de arbitraje que apoyó y patrocinó durante dos años. No existe controversia con relación a este particular.

[7]El Ing. Jorge M. Guillermety fue nombrado por la AEP y la AVP. Constructora Estelar y Seaboard Surety nominaron al licenciado Moreda González, y el tribunal designó al licenciado Corretjer Piquer.

El panel de árbitros celebró sobre cincuenta y cinco (55) días de vistas que comenzaron el 31 de enero de 2000 y culminaron el 6 de diciembre de 2001. Durante dichas vistas, hubo numerosos testigos y prueba pericial en ingeniería y contabilidad. Además, las partes sometieron memorandos post-vistas y memorandos de réplica a vencer el 1ro de abril de 2002.

Finalmente, el panel de árbitros emitió un extenso laudo el 15 de mayo de 2002. Por una parte, el Ing. Guillermety y el licenciado Corretjer Piquer concluyeron que la declaración de incumplimiento emitida por la AEP y AVP era apropiada. Por el contrario, el licenciado Moreda González emitió una opinión disidente en la cual determinó que no estaba justificada la declaración de incumplimiento.[8]

En desacuerdo con el laudo emitido, Seaboard Surety y Constructora Estelar presentaron ante el Tribunal de Primera Instancia sendas solicitudes de revocación, el 12 de agosto de 2002 y el 9 de agosto de 2002, respectivamente.[9]

---

[8] Véase, Apéndice, CC-2009-0259, a las págs. 536-614.

[9] Las solicitudes para revocar el laudo, al amparo del Art. 24 de la Ley de Arbitraje, 32 L.P.R.A. § 3224, fueron presentadas dentro de los tres (3) meses siguientes a la entrega del laudo en la acción de daños y perjuicios presentada por Constructora Estelar el 15 de noviembre de 1996. Véanse, "Solicitud de Revocación y/o Anulación de Laudo de Arbitraje" presentada por Surety Board, Apéndice, CC-2009-259, a las págs. 276-323; "Moción para Revocar o Anular Laudo" presentada por Constructora Estelar, Apéndice, CC-2009-259, a las págs. 327-334; "Memorándum en Apoyo a Moción para Revocar o Anular Laudo" presentada por

Por su parte, Seaboard Surety impugnó el laudo al indicar que los hechos para sustentarlo son contrarios a derecho, se le privó de su derecho a seleccionar la forma en que podía cumplir su obligación al amparo de la fianza emitida, tomó en consideración evidencia inadmisible, al concluirse que no tenían un derecho a un periodo de cura (*cure period*)[10] y al entender que fue emitido sin jurisdicción debido a que no fue dictado dentro del término de treinta (30) días a partir de la última vista de arbitraje conforme a lo dispuesto en la ley y el acuerdo de sumisión sin que dicho término fuera extendido por escrito.[11]

Por otro lado, Constructora Estelar objetó el laudo de arbitraje al señalar, entre otras, que la opinión mayoritaria de los árbitros que firmaron el decreto delegaron sus funciones de evaluar y aquilatar la

---

Constructora Estelar, Apéndice, CC-2009-259, a las págs. 341-416; "Relación de Hechos Determinados en el Laudo Mayoritario y Señalamiento de Inconsistencias y Errores en los Mismos" presentada por Constructora Estelar, Apéndice, CC-2009-259, a las págs. 417-479.

[10]Este es un periodo que se brinda al contratista para que pueda reparar el alegado incumplimiento. Por regla general, comienza con una notificación escrita al contratista en el que se le informa sobre la falta alegada. La industria de la construcción reconoce este tipo de periodo de cura antes de que se decrete la terminación del contrato. Véase, M. Klinger y otros, The Construction Project: phases, people, terms, paperwork, processes, Estados Unidos, American Bar Association, 2006, 173.

[11]Con relación a este particular, Seaboard Surety hace referencia a la cláusula del *Takeover Agreement* que establece como sigue: "This Agreement shall not be changed, amended or altered in any way except in writing

evidencia, violaron el debido proceso de ley al no reconocer ni impartir vigencia a las estipulaciones y admisiones de las partes, actuaron contrario a derecho y luego de expirado el término jurisdiccional de treinta (30) días para ello sin que éste fuera prorrogado por escrito, por lo que no surte efecto. Constructora Estelar arguye que el referido término expiró el 1ro de mayo de 2002.[12] Para sostener su impugnación ante el Tribunal de Primera Instancia, Constructora Estelar presentó un memorándum en apoyo a su contención y una relación de hechos determinados con un señalamiento de inconsistencias y errores.

El 18 de febrero de 2003 la AEP presentó su postura en cuanto a la solicitud de impugnación del laudo de arbitraje.[13] A tales efectos, la AEP argumentó que el Tribunal de Primera Instancia está vedado de revisar la apreciación de los hechos determinados por el panel de árbitros debido a que les corresponde a éstos aquilatar la prueba. La AEP enfatizó que la norma jurídica es a favor del arbitraje por lo que los tribunales no se inclinan a revocar los laudos. En torno al aspecto concerniente a la jurisdicción, la AEP indicó que las partes extendieron el

---

and executed by both the Owner/Agent and Surety". Véase, Apéndice, CC-2009-0259, a la pág. 174.

[12]Véase, "Memorándum en Apoyo a Moción para Revocar o Anular Laudo", Apéndice, CC-2009-259, a la pág. 375.

[13]Véase, "Solicitud de Desestimación de Impugnación de Laudo de Arbitraje" presentada por la AEP, Apéndice, CC-2009-259, a las págs. 227-235.

término para que el panel de árbitros emitiera el laudo a cuarenta y cinco (45) días a partir de que se sometieran las réplicas a los memorandos, es decir, desde el 1ro de abril de 2002, por lo que el tiempo para emitir el laudo culminaba el 16 de mayo de 2002. La AEP presentó declaraciones juradas del licenciado Corretjer Piquer y del Ing. Guillermety para establecer que el caso quedó finalmente sometido el 1 de abril de 2002 y que el término para rendir el laudo vencía el 16 de mayo de 2002.[14] Además, hizo referencia a la "Moción Informando Término para Emisión de Laudo de Conformidad con Pacto Unánime" suscrita por Constructora Estelar con fecha del 9 de mayo de 2002.[15]

---

[14]Véase, Apéndice, CC-2009-0259, a las págs. 238-242.

[15]En ésta se expresa, en lo pertinente:

Comparece la parte demandante, por conducto de su representación legal que suscribe, y respetuosamente informa lo siguiente;

1. En las vistas de arbitraje se pactó unánimemente lo siguiente, con el consentimiento de los árbitros en vista evidenciaria y con la presencia de todos los abogados:

a   El término para someter los memorandos post-vistas vencería el 20 de febrero de 2002.

b   Las partes presentarían un memorando de réplica para el 25 de marzo de 2002.

c   El Panel, debido al volumen de evidencia y los datos que el caso conlleva, tendría el término de cuarenta y cinco días calendario desde la radicación del memorándum de réplica para emitir su laudo.

A tenor con ello, la AEP señaló que no existen razones para que proceda la revocación y/o anulación del laudo, es decir, no se incurrió en fraude, parcialidad, corrupción, y los árbitros no se excedieron de sus funciones conforme al acuerdo de sumisión, por lo que procede la confirmación del decreto. De igual forma, la AVP presentó en abril de 2003 su postura con relación a la impugnación del laudo sometida por Constructora Estelar y Seaboard Surety.[16] En efecto, la AVP señaló que las determinaciones de hecho sobre la interpretación del contrato y la prueba recibida no son revisables judicialmente. A la vez, la AVP concurrió con lo expresado por la AEP en su solicitud de desestimación.

---

2. Las fechas fueron modificadas a solicitud de una u otra parte con el consentimiento unánime del Panel. Inicialmente Estelar solicitó tiempo adicional para someter su memorando, a lo que las demás partes consintieron. Subsiguientemente Vivienda Pública solicitó tiempo para someter el memorando de réplica, a vencer el 1 de abril de 2002. Todas las demás partes expresaron su consentimiento, por lo que todas las partes sometieron sus memorandos de réplica el 1 de abril de 2002.

3. Considerando los acuerdos sobre términos de radicación, las extensiones pactadas y la fecha en que, como consecuencia, la controversia quedó sometida al Panel, el término para emitir laudo vence el 16 de mayo de 2002.

POR TODO LO CUAL, respetuosamente se solicita a este Honorable Tribunal que tome conocimiento de la información aquí contenida.

Véase, Apéndice CC-2009-0259, a las págs. 480-481.

[16]Véase, Apéndice, CC-2009-0259, a las págs. 208-213.

El Tribunal de Primera Instancia celebró una audiencia argumentativa, y una vez examinadas las contenciones de las partes con sus respectivos apéndices que contenían la prueba presentada ante el panel de arbitraje y las transcripciones de las referidas audiencias,[17] emitió sentencia parcial el 15 de noviembre de 2006, archivada en autos el 5 de diciembre de 2006.[18] Mediante el referido dictamen, el foro primario revocó el laudo emitido al concluir que la declaración de incumplimiento efectuada por la AEP y la AVP fue errónea en los hechos, forma y en derecho.

Específicamente, el Tribunal de Primera Instancia destacó que las partes pactaron que el laudo de arbitraje sería emitido conforme a derecho en cuanto a la validez de la declaración de incumplimiento del proyecto Ernesto Ramos Antonini. El foro primario reconoció que su función estaba limitada a revisar el laudo por el expediente del arbitraje, por lo que concedería deferencia a todo hecho determinado por el panel de árbitros que estuviera sostenido por la prueba sustancial sometida y admitida por el tribunal de acuerdo con un balance racional de la prueba. Asimismo, expresó que un hecho estipulado o

_____

[17]No contamos con el expediente del panel de árbitros, la transcripción de dichos procedimientos ni la evidencia documental aquilatada. Tampoco poseemos copia de los memorandos y réplicas presentadas por las partes durante dicho proceso.

[18]Recordamos, que la impugnación del laudo de arbitraje fue presentada dentro del caso de daños y

admitido por las partes reducía la controversia entre éstas y un error en la determinación de un hecho que no está sostenido o es contrario a la prueba, constituyen un error de derecho.[19]

El Tribunal de Primera Instancia recogió en detalle aquellos hechos que consideró estaban apoyados por la prueba presentada para concluir que el laudo mayoritario no está sostenido por el récord en su totalidad y es contrario a las admisiones, estipulaciones, reconocimiento y obligaciones de las partes. El foro primario concluyó que Constructora Estelar no abandonó el proyecto. Por el contrario, estableció que la AVP y la AEP no administraron el contrato diligentemente.

El Tribunal de Primera Instancia atendió el planteamiento sobre la jurisdicción del panel de árbitros esgrimido por Constructora Estelar. A estos efectos, el foro primario expresó que:

> La ausencia de una extensión de tiempo por escrito y firmada por la letra de la ley priva al panel arbitral de jurisdicción. Evitamos profundizar en dicho tema para evitar un choque entre la letra de dicha ley y planteamientos sobre su validez, pues habiéndose decretado la revocación del laudo, el punto es innecesario.[20]

El 15 de diciembre de 2006 la AEP presentó una reconsideración y solicitud de determinaciones de hechos

---

perjuicios presentado por Constructora Estelar en el año 1996.

[19]Véase, sentencia parcial, Apéndice, CC-2009-0259, a las págs. 127-128.

[20]Véase, sentencia parcial, Apéndice CC-2009-0259, a las págs. 158-159.

adicionales de la sentencia parcial.[21] Adujo que procedía que el Tribunal de Primera Instancia reconsiderara su dictamen al sostener que el foro primario carece de jurisdicción para revocar el laudo y sustituir las determinaciones de hechos del panel de árbitros, por lo que procede confirmar el laudo de arbitraje. A su vez, AEP solicitó al foro de instancia una serie de determinaciones de hechos adicionales esencialmente dirigidas a establecer una cadena de eventos para concluir que Constructora Estelar incumplió el contrato para la modernización de Ernesto Ramos Antonini sin que las actuaciones de la AVP y la AEP afectaran el desarrollo del proyecto.

El Tribunal de Primera Instancia ordenó a las partes replicar a la solicitud de reconsideración y determinaciones de hechos adicionales mediante Orden emitida el 28 de diciembre de 2006, notificada el 31 de enero de 2007. [22]

Entretanto, el 29 de diciembre de 2006, Constructora Estelar presentó su oposición a la solicitud de reconsideración y de determinaciones de hechos adicionales presentada por la  AEP.[23] En compendio, señaló que el Tribunal de Primera Instancia tiene autoridad para revocar el laudo y actuó correctamente al constatar que los hechos determinados por el panel de arbitraje estuvieron

---

[21]Véase, "Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales", Apéndice, CC-2009-0259, a las págs. 100-117.

[22]Véase, Apéndice, CC-2009-0259, a las págs. 615-616.

sostenidos por la prueba o no fueron contrarios a las admisiones de las partes. Arguyó que dicha potestad surge del convenio de arbitraje al requerir que el laudo emitido sea conforme a derecho. De otra parte, debatió que no procedía la solicitud de determinaciones de hechos adicionales ya que la función del Tribunal de Primera Instancia al revisar un decreto de arbitraje es una de naturaleza apelativa.

Por su parte, el 10 de enero de 2007 Seaboard Surety presentó su oposición en la que expresó que las partes pactaron que el laudo debió ser conforme a derecho, por lo que el Tribunal de Primera Instancia estaba facultado para revisar que las determinaciones de hechos acogidas por el panel de árbitros estuviesen sustentadas por la prueba. Asimismo, Seaboard Surety sostuvo que la solicitud de determinaciones de hechos es frívola.[24]

Luego de múltiples escritos presentados por las partes en apoyo a las posturas antes reseñadas,[25] el 2 de mayo de 2007, notificada el 9 de mayo de 2007, el Tribunal de

---

[23]Véase, Apéndice, CC-2009-0259, a las págs. 86-99.
[24]Véase, Apéndice, CC-2009-0259, a las págs. 74-85.

[25]Véase, "Réplica a Oposición a Moción de Reconsideración" presentada por la AEP el 22 de febrero de 2007, "Respuesta a Réplica a Moción de Reconsideración" presentada el 14 de marzo de 2007 por Constructora Estelar, "Dúplica a Réplica a Oposición a Moción Solicitando Reconsideración y Solicitud de Determinaciones de Hechos Adicionales" presentada el 28 de marzo de 2007 por Surety Seaboard, Apéndice, CC-2009-0259, a las págs. 617-623,650-652.

Primera Instancia declaró No Ha Lugar la solicitud presentada el 15 de diciembre de 2006 por la AEP.[26]

Así las cosas, el 8 de junio de 2007 la AVP y la AEP presentaron una "Apelación Conjunta" ante el Tribunal de Apelaciones. En ésta cuestionaron la facultad del Tribunal de Primera Instancia para revocar el laudo de arbitraje. Éstas argumentaron que la decisión del panel era final y definitiva para las partes, por lo que las determinaciones de hechos eran vinculantes y obligaban al foro primario cuyo deber era aplicar el derecho a partir de los hechos determinados por los árbitros. Igualmente, adujeron que las únicas razones por las cuales procedía revocar un decreto están enunciadas en la Ley de Arbitraje.[27]

Constructora Estelar y Seaboard Surety se opusieron a la postura de AVP y AEP presentada ante el Tribunal de Apelaciones. En sumario, Constructora Estelar argumentó que el laudo debía ser conforme a derecho, por lo que los hechos determinados por el panel de árbitros deben estar sostenidos por la totalidad de la prueba admitida, estipulada y presentada conforme a los principios del

_____

[26]Véase, Apéndice, CC-2009-0259, a las págs. 690-691. Originalmente, el Tribunal de Primera Instancia acogió la solicitud de la AEP mediante orden del 28 de diciembre de 2006, notificada el 31 de enero de 2007. _Id._, a las págs. 615-616. Luego, el 14 de febrero de 2007, notificada el día 22 de ese mes y año, declaró No Ha Lugar la solicitud presentada por la AEP. _Id._, a las págs. 636-637. Sin embargo, el 9 de marzo de 2007, notificada el 20 de marzo de 2007 el foro primario dejó sin efecto esta determinación. _Id._, a las págs. 640-642.

[27]Véase, Art. 22, Ley de Arbitraje, 32 L.P.R.A. § 3222.

debido proceso de ley. De no estar sostenidos por el expediente, el foro primario puede emitir determinaciones de hechos nuevas o adicionales.

Durante el trámite ante el Tribunal de Apelaciones, dicho foro indagó en torno al aspecto del término para que el panel de árbitros emitiera el laudo. Específicamente, el foro intermedio auscultó si hubo un acuerdo escrito entre las partes para prorrogar el mismo.

Como corolario de lo anterior, las partes sometieron alegatos suplementarios.[28] AEP señaló que el término para que el panel de arbitraje emitiera el laudo fue prorrogado por las partes y ello fue recogido mediante moción presentada por Constructora Estelar con la anuencia de todas las partes.[29]

Por su parte, Constructora Estelar expresamente indicó que nunca ha existido un acuerdo escrito y firmado por todas las partes para extender el término para emitir el laudo y tampoco se ha ratificado por mutuo acuerdo y reducido a escrito que el laudo se haya emitido luego de expirado el término de ley. Por tanto, aduce que ello es un requisito constitutivo lo que hace el laudo nulo en ausencia de un acuerdo escrito para prorrogar el periodo para emitir el decreto. De igual forma, Constructora Estelar expuso que ello le causó un daño sustancial ya que

---

[28]Véase, "Alegato Suplementario" presentado por la AEP, Apéndice, CC-2009-0259, a las págs. 1040-1060.

en ese tiempo se preparó un proyecto de laudo que incorporaba los argumentos diseñados por la AEP y la AVP.[30] Finalmente, Constructora Estelar señaló que el arbitraje estaba delimitado en tiempo, por lo que el único mecanismo que resta para dilucidar la controversia consiste en acudir al tribunal donde existe un caso pendiente.

De otra parte, Seaboard Surety señaló que no media un acuerdo escrito para la extensión del término para emitir el laudo conforme a lo que las partes acordaron en el contrato. Así, pues, arguyó que no aplican las disposiciones contenidas en el Art. 14 de la Ley de Arbitraje, *supra*.[31] Al igual que Constructora Estelar,

---

[29]La AEP se refiere a la "Moción Informando Término para Emisión de Laudo de Conformidad con Pacto Unánime". Véase, nota al calce 15.

[30]Constructora Estelar cita el Art. 14 de la Ley de Arbitraje Comercial, 32 L.P.R.A. § 3214 y el *Takeover Agreement*. A pesar de ello, Constructora Estelar indicó que durante las vistas de arbitraje las partes alcanzaron un compromiso para prorrogar el término para emitir el laudo a cuarenta y cinco días desde que se sometiere el último memorando, por lo que según dicho compromiso, expiró el 16 de mayo de 2002. Asimismo, al igual que la AEP, indicó que informó sobre lo acordado a las partes y al árbitro sin que se hubiera presentado oposición de clase alguna. Constructora Estelar destacó que cuando la AEP se opuso a la impugnación del laudo ratificó e informó por escrito que se había prorrogado el término para emitir el mismo. Constructora Estelar indicó que la AVP adoptó por referencia lo indicado por la AEP, pero que Seaboard Surety nunca ha expresado por escrito su anuencia a la referida prórroga. Véase, "Memorando Suplementario conforme Resolución del 29 de agosto de 2008", Apéndice, CC2009-0259, a las págs. 1066-1084. Nótese, que Constructora Estelar no acudió ante el Tribunal de Apelaciones para plantear que el panel de árbitros actuó sin jurisdicción.

[31]Seaboard Surety indicó que Constructora Estelar hizo un esfuerzo por obtener un acuerdo escrito concediendo la extensión del término, el cual suscribiría, pero como se

Seaboard Surety argumentó que ante la falta de jurisdicción para proceder el arbitraje, lo que procede es que el Tribunal de Primera Instancia dilucide la controversia en el pleito pendiente ante dicho foro.[32]

Entretanto, Constructora Estelar solicitó la desestimación del recurso presentado ante el Tribunal de Apelaciones por entender que el mismo era tardío.[33] Adujo que la moción de reconsideración no interrumpió el término para acudir ante el foro intermedio y la solicitud de determinaciones de hechos no estaba disponible cuando el Tribunal de Primera Instancia funge como foro revisor. Seaboard Surety se unió a la solicitud de desestimación.

La AEP se opuso a la desestimación indicando que cuando el Tribunal de Primera Instancia acogió la moción de reconsideración no había transcurrido el término para acudir ante el Tribunal de Apelaciones.[34] Constructora Estelar, por su parte, replicó a dicha petición.[35]

---

le notificó que AEP y AVP no firmarían el mismo, no procedió a firmarlo.

[32]Tampoco Seaboard Surety cuestionó la sentencia parcial emitida por el Tribunal de Primera Instancia ante el Tribunal de Apelaciones.

[33]Véase, "Moción en Solicitud de Desestimación por Falta de Jurisdicción", Apéndice, CC-2009-0259, a las págs. 1186-1193.

[34]Véase, "Oposición a Solicitud de Desestimación por Falta de Jurisdicción y Solicitud de Orden", Apéndice, CC-2009-0259, a las págs. 1204-1209.

[35]Véase, "Réplica a Oposición a Solicitud de Desestimación por Falta de Jurisdicción", Apéndice CC-2009-0259, a las págs. 1217-1231.

El 5 de febrero de 2009 el Tribunal de Apelaciones declaró No Ha Lugar la solicitud de desestimación presentada por Constructora Estelar y paralizó los procedimientos ante el Tribunal de Primera Instancia. El foro intermedio concluyó que la moción presentada interrumpió el término para acudir en alzada al solicitarse determinaciones de hechos adicionales.[36]

Finalmente, el Tribunal de Apelaciones emitió la Sentencia ante nuestra consideración. En ésta resolvió que el panel de árbitros no tenía jurisdicción para emitir el laudo de arbitraje. Al así hacerlo, el Tribunal de Apelaciones, en una concepción rígida del derecho y del proceso de arbitraje, concluyó que la prórroga del término para emitir el laudo debía constar por escrito. En su análisis, el Tribunal de Apelaciones se limitó a concluir que el término para emitir el laudo era de treinta (30) días calendario a partir de la última vista ante el panel de árbitros, por lo que invalidó el laudo. El foro intermedio razonó que la autoridad de los árbitros estaba limitada por el acuerdo de sumisión sin auscultar la inequívoca conducta de las partes. Asimismo, entendió que no se cumplió con los requisitos para prorrogar el término

---

[36]El Tribunal de Apelaciones había emitido una Resolución el 3 de febrero de 2009 declarando No Ha Lugar la solicitud de desestimación. Constructora Estelar solicitó reconsideración. El Tribunal de Apelaciones procedió a emitir una Resolución Enmendada el 5 de febrero de 2009. Nuevamente, Constructora Estelar solicitó reconsideración de la Resolución Enmendada, la cual fue declarada No Ha Lugar el 24 de febrero de 2009.

para emitir el laudo conforme dispone el Art. 14 de la Ley de Arbitraje, *supra,* ya que no existe un acuerdo escrito y firmado por todas las partes.[37] Predicado en ello, el Tribunal de Apelaciones devolvió el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme el Art. 22 de la Ley de Arbitraje, 32 L.P.R.A. § 3222.[38]

Inconforme, la AEP en conjunto con la AVP comparecieron ante este Tribunal.[39] De igual forma, Constructora Estelar impugnó la sentencia del foro intermedio.[40] Los referidos recursos fueron consolidados el 25 de junio de 2010.

Ante nos, Constructora Estelar señaló esencialmente que el Tribunal de Apelaciones carecía de jurisdicción para atender la petición presentada por la AEP y la AVP ante dicho foro, por lo que solicita se revoque al foro

---

[37]Al así resolver, el Tribunal de Apelaciones entendió que no era necesario decidir si el Tribunal de Primera Instancia erró al revocar el laudo de arbitraje impugnado.

[38]En lo pertinente, el Art. 22 de la Ley de Arbitraje, *supra,* establece:

> En el caso que se revoque un laudo, el tribunal podrá a su discreción ordenar una nueva vista ante los mismos árbitros, o ante árbitros nuevos a seleccionarse en la forma en que se disponga en el convenio para la selección de los árbitros originales, y cualquier disposición que limite el término dentro del cual los árbitros podrán llegar a una decisión se considerará aplicable al nuevo arbitraje y a comenzar desde la fecha de la orden del tribunal.

[39]Dicho recurso corresponde al CC-2009-0259.

[40]El recurso presentado por Constructora Estelar fue identificado como el CC-2009-00267.

intermedio. Los errores señalados por Constructora Estelar son:

PRIMER SEÑALAMIENTO DE ERROR- Erró el Tribunal de Apelaciones al determinar que tenía jurisdicción para atender el recurso de *Certiorari*, y concluir que el término para recurrir en alzada quedó interrumpido cuando la acogida por el Tribunal de Instancia a la moción, llamada reconsideración, fue notificada veintisiete días luego de haber expirado el término para recurrir en alzada.

SEGUNDO SEÑALAMIENTO DE ERROR- Erró el Tribunal de Apelaciones al determinar que la moción presentada por la AEP/AVP que tituló *Solicitud de Reconsideración y Determinaciones de Hechos Adicionales* es tal cosa, independientemente de su contenido, carente de fundamentos, de referencias a la evidencia, de señalamiento de materialidad y/o citas al récord.

Por su parte, AEP y AVP cuestionaron la referida sentencia al señalar que erró el Tribunal de Apelaciones al concluir que el panel de árbitros no tenía jurisdicción para emitir el laudo debido a que no se extendió el término para ello en un acuerdo escrito y firmado por todas las partes y al no revocar la sentencia parcial emitida por el Tribunal de Primera Instancia que sustituyó y modificó las determinaciones de hechos emitidas por los árbitros. La AEP y la AVP señalaron los siguientes errores:

ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL DETERMINAR EN SU SENTENCIA QUE EL PANEL DE ÁRBITROS QUE ATENDIÓ EL ARBITRAJE NO TENÍA JURISDICCIÓN PARA EMITIR EL MISMO DEBIDO A QUE LA EXTENSIÓN DEL TÉRMINO PARA ELLO NO FUE REALIZADA POR ESCRITO Y SUSCRITA POR TODAS LAS PARTES.

ERRÓ EL TRIBUNAL DE APELACIONES AL NO REVOCAR LA SENTENCIA DEL TRIBUNAL DE INSTANCIA MEDIANTE

LA CUAL SE "REVOCÓ" EL LAUDO DE ARBITRAJE, SIN JURISDICCIÓN PARA ELLO.

ERRÓ EL TRIBUNAL DE APELACIONES AL NO REVOCAR LA SENTENCIA DEL TRIBUNAL DE INSTANCIA POR SUSTITUIR LAS DETERMINACIONES DE HECHOS REALIZADAS POR EL PANEL DE ÁRBITROS Y CONTENIDAS EN EL LAUDO, LUEGO DE ÉSTOS AQUILATAR LA PRUEBA DURANTE 55 DÍAS DE VISTAS EVIDENCIARIAS, SIN CONCEDERLE LA DEFERENCIA Y RESPETO QUE DICHAS DETERMINACIONES MERECEN Y SIN MEDIAR UNA DETERMINACIÓN PREVIA DE PASIÓN, PREJUICIO O PARCIALIDAD.

ERRÓ EL TRIBUNAL DE APELACIONES AL NO REVOCAR LA SENTENCIA PARCIAL EMITIDA POR EL TRIBUNAL DE INSTANCIA FAVORECIENDO LA PARTE RECURRIDA, PORQUE AÚN SI HUBIESE TENIDO RAZÓN AL CONCLUIR QUE EL PANEL DE ÁRBITROS HABÍA ERRADO COMO ASUNTO DE DERECHO, NO TENÍA AUTORIDAD PARA MODIFICAR SUS CONCLUSIONES DE HECHOS, POR LO QUE LO ÚNICO QUE PODÍA HACER EL TRIBUNAL DE PRIMERA INSTANCIA ERA DEVOLVER LA CONTROVERSIA A DICHO PANEL.

Ante ese cuadro procede dilucidar si el Tribunal de Apelaciones tenía jurisdicción para atender los errores señalados por la AVP y la AEP; cuáles son los requisitos para prorrogar un término establecido para emitir un laudo de arbitraje y sus posibles consecuencias.

II

En primer lugar, atenderemos la controversia planteada por Constructora Estelar ya que ésta alude a la jurisdicción del Tribunal de Apelaciones para atender los méritos del reclamo de la AEP y la AVP. Veamos.

Es norma conocida que los tribunales debemos ser celosos guardianes de nuestra jurisdicción, estando obligados a considerarla aun en ausencia de algún señalamiento de las partes al respecto. La razón para ello es que la jurisdicción delimita la potestad o facultad que

los tribunales poseemos para atender una controversia ante nuestra consideración. Tal asunto debe ser resuelto con preferencia porque de carecer de jurisdicción para atender un asunto, lo único que corresponde hacer es así manifestarlo. S.L.G. Szendrey- Ramos v. F. Castillo, 169 D.P.R. 873, 883 (2007); Juliá, et al. v. Epifanio Vidal, 153 D.P.R. 357, 366-367 (2001); Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314, 326 (1997); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 63 (1989).

El no tener la potestad para atender un asunto no puede ser corregido ni atribuido por el tribunal. García v. Hormigonera Mayagüezana, 172 D.P.R. 1 (2007); Vázquez v. A.R.P.E., 128 D.P.R. 513, 537 (1991); Pueblo v. Miranda Colón, 115 D.P.R. 511, 513 (1984). Es doctrina reiterada que la falta de jurisdicción sobre la materia conlleva obligatoriamente las siguientes consecuencias: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal ni el tribunal lo puede hacer *motu proprio*; (3) los dictámenes son nulos (nulidad absoluta); (4) los tribunales apelativos deben examinar la jurisdicción del foro de donde procede el recurso y, (5) el planteamiento de falta de jurisdicción sobre la materia puede hacerse en cualquier etapa del procedimiento por cualquiera de las partes o por el tribunal *motu proprio*. Vázquez v. A.R.P.E., *supra.*

En el caso ante nos, estamos ante una revisión de un laudo de arbitraje. Al emitirse la sentencia parcial por el Tribunal de Primera Instancia, la revisión de las órdenes y sentencias emitidas por el foro primario, confirmando, modificando, corrigiendo o revocando un laudo de arbitraje, son revisables mediante el recurso de *certiorari* ante el Tribunal de Apelaciones.[41] Habida cuenta de ello, el Tribunal de Apelaciones tiene competencia para revisar las sentencias emitidas por el Tribunal de Primera Instancia en el ejercicio de su jurisdicción para considerar la impugnación de laudos arbitrales. El recurso debe ser presentado dentro del término de treinta (30) días siguientes a la fecha en que dictó la sentencia recurrida.

---

[41]Véanse, el Art. 28 de la Ley de Arbitraje, 32 L.P.R.A. § 3228, el inciso (b) del Art. 4.006 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, conocida como la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura), 4 L.P.R.A. § 24y (b) y la Regla 32(D) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B R. 32(D). El inciso (b) del Art. 4.006 de la Ley de la Judicatura de 2003 dispone que el Tribunal de Apelaciones conocerá "mediante auto de *certiorari* expedido a su discreción, de cualquier resolución u orden dictada por el Tribunal de Primera Instancia".

Por su parte, la Regla 32 (D) del Reglamento del Tribunal de Apelaciones establece que:

> El recurso de *certiorari* para revisar cualquier otra resolución u orden o sentencia final al revisar un laudo de arbitraje del Tribunal de Primera Instancia se formalizara mediante la presentación de una solicitud dentro de los treinta (30) días siguientes a la fecha del archivo en autos de copia de la notificación de la resolución u orden recurrida. Ese término es de cumplimiento estricto.

Ahora bien, hay que tener presente que al momento de los hechos ante nuestra consideración, estaban vigentes las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III,[42] las cuales permitían varios procedimientos una vez dictada una sentencia por el Tribunal de Primera Instancia. De los procedimientos post-sentencia se destaca la moción de reconsideración y la solicitud de determinaciones de hechos y conclusiones de derechos adicionales regidas por las Reglas 47 y 43.3 de las Reglas de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 47 y R 43.3, respectivamente.

La antigua moción de reconsideración regida por la Regla 47, *supra,* permitía a una parte adversamente afectada por una sentencia o resolución solicitar la reconsideración de ésta en un plazo jurisdiccional de quince (15) días desde la notificación de la resolución o la fecha de archivo en autos de la sentencia. Presentada a tiempo, el Tribunal de Primera Instancia estaba obligado a considerar la solicitud de reconsideración. Una vez reflexionada, el foro primario tenía tres alternativas a seguir: (1) tomar, dentro del término de diez (10) días, "alguna determinación" respecto a la referida moción --por ejemplo, señalar la misma para vista, concederle término a la otra parte para que se exprese, etc.-- en cuya situación se entendía interrumpido el término de revisión;

---

[42]La discusión está enmarcada en las Reglas de Procedimiento Civil de 1979 vigentes al momento de los hechos ante nuestro estudio.

(2) declararla expresamente sin lugar dentro del mencionado término de diez (10) días; y (3) dejar transcurrir el término de diez (10) días sin tomar acción alguna lo que constituía un rechazo de plano. En estas dos últimas situaciones, se consideraba que la moción de reconsideración no interrumpió el término de revisión. Rodríguez Medina v. Mehne, 168 D.P.R. 570, 574-575 (2006); Flores Concepción v. Taino Motors, 168 D.P.R. 504, 516-518(2006); Villanueva v. Hernández Class, 128 D.P.R. 618, 632-634 (1991).

Ahora bien, aún transcurrido el término dispuesto de diez (10) días en la Regla 47, *supra,* el Tribunal de Primera Instancia podía acoger la moción de reconsideración oportunamente presentada siempre y cuando lo hiciera y notificara dentro del periodo para acudir ante el Tribunal de Apelaciones o antes de que se presentara algún recurso dentro del referido término; en cuyo caso se interrumpía el plazo para acudir ante el Tribunal de Apelaciones.[43] Sindicato de Bomberos Unidos de P.R. v. Cuerpo de Bomberos de Puerto Rico y otros, res. 26 de enero de 2011, 2011 T.S.P.R. 12, 180 D.P.R. ___;R & G Mortgage v. Arroyo Torres y otros, res. 30 de diciembre de 2010, 2010 T.S.P.R. 236, 180 D.P.R.____;Caro v. Cardona,

---

[43]Bajo las Reglas de Procedimiento Civil vigentes, una oportuna y bien fundamentada moción de reconsideración interrumpe automáticamente el término para acudir en alzada. 32 L.P.R.A. Ap. V, R. 47.

158 D.P.R. 592, 598-600 (2003); Lagares v. E.L.A., 144 D.P.R. 601, 612-613 (1997).

Además de la moción de reconsideración, bajo el esquema de las Reglas de Procedimiento Civil de 1979, una parte podía solicitar una serie de determinaciones adicionales de hechos y conclusiones de derecho de una sentencia emitida por el Tribunal de Primera Instancia al amparo de la antigua Regla 43.3, *supra.* La referida solicitud debía ser presentada no más tarde de diez (10) días después de haberse archivado en autos copia de la notificación de la sentencia y el tribunal podía, entonces, enmendar la sentencia de conformidad.[44] El efecto que ello acarreaba consistía en que los términos para acudir ante el Tribunal Intermedio eran interrumpidos y comenzaban a contarse nuevamente tan pronto se resolviera las determinaciones y conclusiones solicitadas. Regla 43.4 de las de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 43.4; Juliá et al. v. Epifanio Vidal, S.E., 153 D.P.R. 357, 366 (2001); Rodríguez v. Zegarra, 150 DPR 649, 653-654 (2000).

A tenor con la solicitud hecha conforme a la Regla 43.3, *supra,* el Tribunal de Primera Instancia tenía plena oportunidad de enmendar y corregir cualquier error cometido, y por lo tanto, hacer justicia cumplida. Es por

---

[44]Hoy día esta moción debe ser solicitada en un término de quince (15) días después del archivo en autos de la sentencia. De presentarse una moción de reconsideración o de nuevo juicio, deberán solicitarse todas en un solo escrito. 32 L.P.R.A. Ap. V R. 43.1.

ello que la moción debía contener una relación, aunque fuera sucinta, de cuáles hechos a juicio del solicitante debían ser enmendados o los que no habían sido determinados por el tribunal sentenciador. La referida moción debía contener determinaciones específicas que se fundaran en cuestiones sustanciales relacionadas con los hechos pertinentes o conclusiones de derechos materiales. García v. Hormigonera Mayagüezana, 172 D.P.R. 1, 6-7 (2007); Vega, et al. v. Telefónica, 156 D.P.R. 584, 596-597 (2002); Andino v. Topeka, Inc., 142 D.P.R. 933, 938-939 (1997).

Claro está, la mera solicitud al amparo de la Regla 43.3, *supra,* no obligaba al juez de instancia a tener que formular determinaciones de hechos adicionales o enmendar los ya determinados. La determinación del juez es una meramente discrecional. Recordemos que el juez de instancia al examinar la solicitud generalizada de una parte no podía hacer determinaciones de hechos adicionales que pudieran estar en contradicción con las determinaciones de hechos ya formuladas que están avaladas por la prueba desfilada ante sí, o en oposición a sus propias conclusiones de derecho apoyadas en los hechos debidamente probados. En otras palabras, el foro de instancia no estaba obligado a realizar determinaciones de hechos y de derecho adicionales o enmendar las ya realizadas si estimaba que las mismas no procedían. Carattini v. Collazo Sist. Analysis, Inc., 158 D.P.R. 345,

357 (2003); Blas v. Hospital Guadalupe, 146 D.P.R. 267, 319 (1997).

En atención a las actuaciones del Tribunal de Primera Instancia al revisar un laudo de arbitraje, hemos establecido que ello es análogo al de una revisión administrativa y que el rol del foro primario es el de un foro apelativo. U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348, 354-355 (1985). De igual forma, hemos analizado que la moción de determinaciones de hechos adicionales está disponible al revisar un laudo de arbitraje en las mismas instancias en las que procede una solicitud al amparo de la Regla 43.3, *supra.* A estos efectos, establecimos que en estos casos las determinaciones de hechos pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el récord, por lo que, el foro de instancia podría emitir determinaciones de hechos nuevas o adicionales en cuyo caso estaría disponible la moción al amparo de la Regla 43.3, *supra.* U.I.T.I.C.E. v. C.E.A.T., 147 D.P.R. 522, 528 (1999).[45]

Con el marco doctrinal antes enunciado pasemos a atender la reclamación de Constructora Estelar con

---

[45]En el referido caso, este Tribunal concluyó en un arbitraje laboral que la solicitud al amparo de la Regla 43.3 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 43.3, no interrumpió el término para recurrir en alzada porque el foro de instancia no hizo determinaciones de hechos nuevas o adicionales y la moción fue radicada fuera del término jurisdiccional dispuesto para ello.

relación a la falta de jurisdicción del Tribunal de Apelaciones.

III

El planteamiento central de Constructora Estelar estriba en que el Tribunal de Apelaciones carecía de jurisdicción para atender el recurso que le fuera presentado por la AVP y la AEP. Su argumento medular consiste en que la solicitud de reconsideración presentada por la AEP no interrumpió el término para acudir ante el foro intermedio ya que no fue acogida y notificada dentro del término para que el Tribunal de Primera Instancia pudiera entender en la misma. A su vez, Constructora Estelar expresó que la moción presentada no constituye una solicitud de determinaciones de hechos adicionales. No le asiste la razón.

El tracto procesal refleja que el Tribunal de Primera Instancia emitió la sentencia parcial el 15 de noviembre de 2006, archivada en autos el 5 de diciembre de 2006. En el término dispuesto para ello, el 15 de diciembre de 2006, la AEP presentó una solicitud de reconsideración y una solicitud de determinaciones de hechos adicionales.

El 28 de diciembre de 2006 el foro primario acogió la moción de reconsideración y determinaciones de hechos adicionales. Sin embargo, dicha actuación fue notificada el 31 de enero de 2007. Indudablemente, la moción de reconsideración no interrumpió el término para acudir en alzada. Es evidente que la notificación acogiendo la

moción de reconsideración fue notificada en exceso del término para acudir ante el Tribunal de Apelaciones, el cual vencía el 4 de enero de 2007. Bajo estas circunstancias, la moción de reconsideración no interrumpió el término para acudir en alzada. Reiteramos que la notificación es parte integral de la actuación judicial, por lo que para que una orden o resolución surta efecto, tiene que ser emitida y notificada a las partes.[46]

A pesar de lo anterior, la AEP no tan solo presentó una moción de reconsideración ante el Tribunal de Primera Instancia sino que, además, solicitó que el referido foro determinara una serie de hechos que consideraba relevantes y probados con relación a la declaración de incumplimiento. Por tanto, debemos atender si la moción al amparo de la Regla 43.3, *supra,* interrumpió el término para acudir ante el Tribunal de Apelaciones. Entendemos en la afirmativa.

Como hemos discutido, la moción de determinaciones de hechos adicionales, de ordinario, está disponible durante la revisión de un laudo de arbitraje en circunstancias particulares en las que el foro primario revisa, emite o modifica las determinaciones de hechos debido a que éstas no están sostenidas por la evidencia sustancial. Precisamente, esta es la situación del caso ante nuestra consideración en las que el Tribunal de Primera Instancia procedió a establecer determinaciones de hechos debido a

---

[46]Véase, Caro v. Cardona, 158 D.P.R. 592, 600 (2003).

que concluyó que las consignadas por el panel de árbitros no estaban apoyadas en la prueba presentada. En estas circunstancias era permisible la presentación de la moción al amparo de la Regla 43.3 de Procedimiento Civil, *supra*. Además, al examinar la referida solicitud, los hechos exigidos están encaminados a establecer que la AEP y la AVP no incumplieron con el contrato entre las partes ni contribuyeron a las alegadas dilaciones de Constructora Estelar. Igualmente, pretenden establecer que Constructora Estelar no tenía la capacidad para cumplir con lo contratado, no entregó las fases terminadas, se atrasó en los trabajos por falta de materiales y mano de obra, los edificios afectados con pintura de plomo no detuvieron la construcción en otras áreas, la falta de la aprobación de las órdenes de cambio no afectó el progreso de la obra, a la fecha de la declaración de incumplimiento el proyecto estaba atrasado, que no trabajó en las terminaciones de los edificios e incumplió con cláusulas esenciales del contrato. A la luz de ello, consideramos que la moción cumple con los requisitos jurisprudenciales establecidos por este Tribunal. La misma propone al foro primario una serie de hechos específicos y pertinentes a la disposición del recurso independiente de si el Tribunal de Primera Instancia descartó o no alguna de estas determinaciones.[47]

---

[47]Véase, <u>García v. Hormigonera Mayagüezana</u>, 172 D.P.R. 1, 8 (2007).

A la luz de lo anterior, el término de treinta (30) días para acudir ante el foro intermedio comenzó a computarse a partir de que el Tribunal de Primera Instancia notificó el No Ha Lugar a la solicitud de la AEP, a saber, desde el 9 de mayo de 2007, por lo que el recurso del 8 de junio de 2007 ante el Tribunal de Apelaciones fue presentado a tiempo. El Tribunal de Apelaciones no erró al emitir su Resolución Enmendada del 5 de febrero de 2009 en la que concluyó que el término para acudir en alzada quedó interrumpido al solicitarse las determinaciones de hechos adicionales.

Consecuentemente, el error señalado por Constructora Estelar en su recurso ante este Tribunal no fue cometido.

IV

Rebasado el asunto jurisdiccional del Tribunal de Apelaciones nos corresponde entender en los planteamientos traídos ante nuestra atención por la AEP y la AVP. Para ello debemos establecer la norma imperante con relación al arbitraje en Puerto Rico. Igualmente, por primera vez, se nos plantea que la prórroga del periodo para emitir un laudo convenida por las partes requiere que conste por escrito conforme los postulados del Art. 14 de la Ley de Arbitraje, *supra.* Además, determinaremos si el panel de árbitros tenía facultad para emitir el laudo impugnado.

En múltiples ocasiones hemos destacado que existe un interés por parte del Estado en promover métodos alternos de adjudicación como lo es la mediación y el

arbitraje. Ello, pues, la resolución por vías alternas al trámite judicial resulta, entre otras cosas, en menos costos para los litigantes, así como una solución más rápida a las controversias litigiosas. Por tal razón, en Puerto Rico existe una vigorosa política pública a favor del arbitraje como método alterno para la solución de disputas y toda duda sobre si procede o no el arbitraje debe resolverse a favor de éste conforme ha sido pactado. Vivoni Farage v. Ortiz Carro, 179 D.P.R. 990, 1000-1001, 1006 (2010); S.L.G. Méndez-Acevedo v. Nieves Rivera, 179 D.P.R. 359, 368 (2010); Municipio de Mayagüez v. Lebrón, 167 D.P.R. 713, 721 (2006); Crufon Const. v. Aut. Edif. Púbs., 156 D.P.R. 197, 205 (2002); Medina v. Cruz Azul de P.R., 155 D.P.R. 735, 738 (2001); PaineWebber, Inc. v. Soc. de Gananciales, 151 D.P.R. 307 (2000); McGregor-Doniger v. Tribunal Superior, 98 D.P.R. 864, 869 (1970).

En nuestra jurisdicción existen dos tipos principales de arbitraje voluntario: el arbitraje comercial y el arbitraje industrial u obrero-patronal. Aquino González v. Asociación de Empleados del Estado Libre Asociado de Puerto Rico y otros, res. 25 de mayo de 2011, 2011 T.S.P.R. 77, 182 D.P.R.____ (2011). El presente caso trata sobre una disputa que surge entre las partes que acordaron someterse al arbitraje comercial.

Desde principios de la década de los cuarenta, y como norma general, no nos inclinamos a decretar la nulidad de un laudo fácilmente a menos que exista algún defecto o

insuficiencia en la sumisión o en el laudo que lo invalide; el procedimiento se haya desviado de manera sustancial y perjudicial; se alegue y pruebe fraude o mala conducta, o la comisión grave y perjudicial de un error que equivalga a la violación del debido proceso de ley.[48] Al así hacerlo, este Tribunal ha adoptado los principios relativos al efecto del laudo arbitral y al ámbito de su revisión vigentes en los distintos estados y en la jurisdicción federal. Autoridad sobre Hogares v. Tribl. Superior, 82 D.P.R. 344, 355 (1961).

En armonía con dichos postulados, el legislador aprobó la Ley de Arbitraje.[49] De esta forma reemplazó al Derecho Español, que rigió el campo del arbitraje comercial, al derogar los Arts. 790 al 839 y el Art. 487 de la Novísima Ley de Enjuiciamiento Civil para España y Ultramar promulgada por R.D. de 3 de febrero de 1881. Véase, Seafarers Inter'l Union v. Trib. Superior, 86 D.P.R. 803, 812 n. 2 (1962); Art. 29 de la Ley de Arbitraje, 32 L.P.R.A. § 3229. La Ley de Arbitraje regula el arbitraje comercial en Puerto Rico y fue adoptada en nuestra jurisdicción siguiendo el andamiaje y los modelos sobre

---

[48]Véanse, Junta de Relaciones del Trabajo v. N.Y.&P.R. S/S Co., 69 D.P.R. 782 (1949); Ríos v. Puerto Rico Cement Corporation, 66 D.P.R. 470 (1946).

[49]La Ley de Arbitraje no aplica a los convenios de arbitraje entre patronos y empleados, los cuales están regidos por la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945, según enmendada, 29 L.P.R.A. § 61, et seq. Sin embargo, al analizar los laudos de arbitraje comercial hemos hecho referencia a la

arbitraje de California y leyes similares de otros estados, en los procedimientos de Nueva York y en la Ley Federal de Arbitraje.[50] D. Helfeld, La Jurisprudencia Creadora: Factor Determinante en el Desarrollo del Derecho de Arbitraje en Puerto Rico, 70 Rev. Jur. U.P.R. 1, 54-55 (2001).

Como consecuencia de su origen, hemos acudido a la jurisprudencia federal y estatal como modelo para la resolución de las controversias ante nos. VDE Corporation v. F & R Contractors, res. 15 de octubre de 2010, 2010 T.S.P.R. 210, 180 D.P.R.____; Municipio de Mayagüez v. Lebrón, supra.

Con la referida medida, se ampliaron las controversias que las partes pueden someter a arbitraje.[51] El Art. 1 de la Ley de Arbitraje, 32 L.P.R.A. § 3201, establece que dos o más partes pueden convenir por escrito en someter a arbitraje cualquier controversia que pudiera ser objeto de una acción existente entre ellos a la fecha del convenio o de cualquier controversia futura. Tal acuerdo es válido excepto por los fundamentos en derecho para revocar cualquier convenio. Martínez Marrero et al. v. González

---

jurisprudencia interpretativa de los laudos obrero-patronales.

[50]Véase, 9 U.S.C. § 1, et seq. La Ley Federal de Arbitraje aplica a contratos en el comercio interestatal y establece que las cláusulas de arbitraje en esos contratos son válidas, irrevocables y mandatorias.

[51]Nótese que el arbitraje para las disputas obreros-patronales es anterior al estar cobijado por la Ley de Relaciones del Trabajo de Puerto Rico del año 1945.

Droz, et al., res. el 11 de enero de 2011, 2011 T.S.P.R. 3, 180 D.P.R.___; S.L.G. Méndez-Acevedo v. Nieves Rivera, *supra*, a la pág. 366; Crufon Const. v. Aut. Edif. Púbs., *supra,* a la pág. 204.

Conforme el Art. 1 de la Ley de Arbitraje, *supra,* el arbitraje es una figura inherentemente contractual que se puede exigir cuando se ha pactado y ello consta por escrito. Municipio de Mayagüez v. Lebrón, *supra,* a la pág. 720; Crufon v. Aut. Edif. Púbs., *supra*; U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. 133, 144 (1994). A tono con lo anterior, el convenio de sumisión es el que confiere la facultad decisional al árbitro y delimita su esfera de acción; por lo que es nulo cualquier laudo que se exceda de los poderes así delegados. Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604, 606-607 (1979).

En cuanto al arbitraje comercial el caso normativo es Autoridad sobre Hogares v. Tribl. Superior, *supra,* en el cual, con miras a fortalecer estos procedimientos, este Tribunal auscultó la intención legislativa para concluir que no siendo un laudo de arbitraje conforme a derecho no procedía la revisión en su fondo o los méritos respecto a cualquier error de apreciación o de interpretación de los hechos y de la ley, a menos que proceda decretarse su revocación, modificación o corrección cuando acontecieren los motivos dispuestos en la Ley de Arbitraje. Como norma general, y cuando las partes no han acordado que el laudo sea conforme a derecho, finalizado el trámite de

arbitraje, las determinaciones realizadas por el árbitro son finales e inapelables y no pueden litigarse ante los tribunales. Tampoco se puede indagar sobre el proceso deliberativo, mental y decisional del árbitro. Mucho menos resultan revisables alegados errores en la apreciación de la prueba o en la aplicación del derecho. Febus y otros v. MARPE Const. Corp., 135 D.P.R. 206, 216-217 (1994); Junta de Relaciones del Trabajo v. N.Y.&P.R. S/S Co., 69 D.P.R. 782, 800 (1949).

Por el contrario, este Tribunal ha sido enfático al destacar que si en el convenio de sumisión las partes acordaron que el laudo sería emitido con arreglo a derecho, el tribunal tiene la facultad para revisar los méritos jurídicos del laudo. Vivoni Farage v. Ortiz Carro, supra, a la pág. 1007; Condado Plaza v. Asoc. Emp. Casinos P.R., 149 D.P.R. 347, 353 (1999); Febus y otros v. MARPE Const. Corp., supra; J.R.T. v. Corp. Crédito Agrícola, 124 D.P.R. 846, 849 (1989); S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. 832, 836-837 (1977); United Steelworkers v. Paula Shoe Co., Inc., 93 D.P.R. 661, 667 (1966). En estos casos la revisión judicial es análoga a la de las decisiones administrativas. C.F.S.E. v. Unión de Médicos, 170 D.P.R. 443, 449 (2007); Rivera v. Adm. Trib., 144 D.P.R. 808, 821-822 (1998). Por tal razón, las determinaciones de hechos en laudos de arbitraje conforme a derecho pueden ser revisadas cuando no están sostenidas por evidencia sustancial en el expediente. U.T.I.C.E. v.

C.E.A.T., *supra,* a la pág. 528.[52] Claro está, aún en estos casos, los tribunales de instancia no deben inclinarse a decretar la nulidad del fallo a menos que efectivamente el mismo no haya resuelto la controversia conforme a derecho. Una mera discrepancia de criterio no justifica la intervención judicial, pues, ello derrotaría los propósitos fundamentales del arbitraje. Rivera v. Samaritano & Co., Inc., *supra,* a las págs. 608-609. Al ser el escrutinio de la decisión de arbitraje equivalente al de los foros administrativos, la intervención con las determinaciones de hechos del árbitro si éstas encuentran apoyo en la totalidad de la prueba dirimida soslaya el principio de deferencia que impera en este tipo de revisión. Las disposiciones sobre los hechos solamente podrán revocarse cuando resulten irrazonables, arbitrarias o ilegales. Torres Santiago v. Departamento de Justicia, res. 25 de mayo de 2011, 2011 T.S.P.R. 78, 182 D.P.R.____. Además, véanse, Pereira Suárez v. Junta de Directores del Condominio Ponciana, res. 30 de junio de 2011, 2011 T.S.P.R. 102, 182 D.P.R.___; Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 397 (1999). El que el laudo tenga que ser emitido conforme a derecho no conlleva

---

[52]Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425 (1997). Véanse, además, Comisión de Ciudadanos v. G.P. Real Property, 173 D.P.R. 998 (2008); Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 761 (1999); Fuertes y Otros v. A.R.P.E., 134 D.P.R. 947, 953 (1993); Rebollo v. Yiyi Motors, 161 D.P.R. 69, 76-77 (2004); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000); García Oyola v. J.C.A., 142 D.P.R. 532, 540 (1997).

que las partes re-litiguen ante el foro de instancia como un juicio plenario cada una de las controversias surgidas. U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 D.P.R. 348, 354-355 (1985).

Además de lo antes establecido, e independiente de si el laudo es conforme a derecho o no, el legislador estableció en la Ley de Arbitraje que el tribunal podría revocar un laudo de arbitraje cuando: (1) se obtuvo mediante corrupción, fraude u otro medio indebido; (2) hubo parcialidad o corrupción evidente de los árbitros o de cualquiera de ellos; (3) los árbitros actuaron erróneamente al tratar de posponer la vista luego de causa justificada para ello, o al rehusar oír evidencia pertinente y material a la controversia, o cuando incurriesen en cualquier error que perjudique los derechos de cualesquiera de las partes; (4) cuando los árbitros se extiendan en sus funciones o el laudo emitido no resuelva de forma final y definitiva la controversia sometida; y (5) no hubo sumisión o convenio de arbitraje válido y el procedimiento se inició sin la intención de arbitrar. En estos casos, donde proceda la revocación del laudo, el tribunal tendrá la discreción para ordenar una nueva vista ante los mismos árbitros, o ante otros nuevos a seleccionarse conforme al convenio para la selección de éstos originalmente, y cualquier disposición que limite el término de éstos para llegar a una decisión se considerará

aplicable al nuevo arbitraje. Art. 22 de la Ley de Arbitraje, 32 L.P.R.A. § 3222.

Igualmente, la Ley de Arbitraje contempla situaciones en las que procede la modificación o corrección del laudo cuando: (1) hubo evidente error en el cálculo en cuanto a unas cifras, error en la descripción de la persona, cosa o propiedad; (2) los árbitros hayan resuelto sobre materia que no le fuera sometida; (3) el laudo sea imperfecto en materia de forma, sin afectar los méritos de la controversia. Art. 23 de la Ley de Arbitraje, 32 L.P.R.A. § 3223.

Dicho marco doctrinario revela que la revisión de los laudos de arbitraje al amparo de la Ley de Arbitraje se circunscribe a las razones contenidas en el referido estatuto, es decir, la determinación de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia. Sin embargo, si las partes acordaron que el laudo sería conforme a derecho, los tribunales pueden intervenir en atención a la norma aplicable, por lo que en estos casos la revisión es análoga a la intervención judicial de las decisiones administrativas.

V

A los fines de resolver el debate ante esta Curia, debemos, en primer lugar, precisar si el panel de árbitros tenía facultad para emitir el laudo transcurrido el

término dispuesto por las partes para ello. De concluir que no tenía la potestad para emitir el laudo procede la revocación del decreto emitido, como intimó el Tribunal de Apelaciones a tenor con el Art. 22 de la Ley de Arbitraje, *supra.* De lo contrario, y bajo el crisol doctrinario antes enunciado, nos corresponde delimitar cuál era la función del Tribunal de Primera Instancia al revisar el laudo impugnado.

Como hemos establecido, la Ley de Arbitraje está fundamentada en el convenio y la voluntad de las partes para someter a arbitraje una controversia. Para ello, el estatuto establece unos parámetros mínimos que regulan el arbitraje y limitan la intromisión judicial con el fin de promover este método de solución de disputas sin menoscabar la autoridad de los tribunales para intervenir y obligar a las partes a proceder al arbitraje de conformidad con lo convenido por éstas.[53]

De igual forma, la Ley de Arbitraje contempla aquellas instancias del nombramiento, juramento, renuncia, compensación y recusación de los árbitros, la incomparecencia de las partes, citaciones a testigos, presentación de evidencia, la forma del laudo, su

---

[53]Véanse, Arts. 3 y 4 de la Ley de Arbitraje, 32 L.P.R.A. secs. 3203 y 3204; Moncharsh v. Heiley & Blase, 3 Cal.4th 1, 10 Cal. Rptr. 2d 183 (1992); City of Oakland v. United Public Employees, 179 Cal. App.3d 356, 224 Cal. Rptr. 523 (1986).

revocación, modificación o confirmación, el efecto de una sentencia y la procedencia de la revisión de éstas.[54]

En aras de propiciar la solución rápida y evitar la dilación excesiva durante la adjudicación de la controversia sometida a arbitraje, la Asamblea Legislativa incluyó un término directivo para emitir el laudo si las partes no fijaban el mismo. Al así hacerlo, el legislador no limitó la voluntad de las partes ya que reconoció la facultad de éstas para prorrogar el referido término incluso luego de emitido el laudo. Para ello estableció un requisito de forma que consiste en que la prórroga o ratificación en casos donde no se hubiere estipulado un plazo las partes lo hicieran por escrito. A estos efectos, El Art. 14 de la Ley de Arbitraje establece:

> Si el término dentro del cual deberá adjudicarse el laudo no se fijare en el convenio de arbitraje, el mismo deberá dictarse dentro de los treinta (30) días siguientes a la terminación de la vista, y cualquier laudo dictado con posterioridad a la expiración de dichos treinta (30) días no surtirá efecto legal, a menos que las partes de mutuo acuerdo prorroguen el término dentro del cual pueda dictarse o lo ratifiquen cuando el mismo fuere dictado con posterioridad a la expiración del término de treinta (30) días. Cualquier prórroga del término o ratificación se hará por escrito y se firmará por todas las partes al arbitraje. 32 L.P.R.A. § 3214.

De la letra clara del Art. 14, *supra,* surge indudablemente que éste aplica cuando las partes no han pactado un término para emitir el laudo. Dicho periodo es uno directivo para evitar la dilación al emitir el decreto de arbitraje sin menoscabar la voluntad de las partes para

---

[54]Véase, Ley de Arbitraje, 32 L.P.R.A. § 3201, *et seq.*

prorrogar el referido plazo.[55] Predicado en ello, el legislador abdicó su función de implementar un lapso uniforme para emitir un laudo de arbitraje. Al así hacerlo, consagró el propósito de nuestra Ley de Arbitraje de otorgar un mayor grado de flexibilidad a su implantación, conforme a lo convenido por las partes.[56]

Cabe señalar, sin embargo, que la Ley de Arbitraje dispone que una de las razones para revocar un laudo de arbitraje consiste en que el árbitro se extienda de sus funciones.[57] Al referirse a ello, aludimos a cuál es la controversia a ser objeto del convenio de sumisión, los términos pactados para someterse a arbitraje o que el laudo sea emitido en determinado momento conforme dispuesto por un estatuto o acordado por las partes.

Como establecimos, en Puerto Rico la Ley de Arbitraje dispone un término directivo para emitir un laudo cuando ello no ha sido fijado por las partes. No obstante, y dado el indubitado carácter contractual del arbitraje, las partes pueden convenir que el laudo sea emitido en

---

[55] Véanse, <u>Fagnani v. Integrity Finance Corp.</u>, 53 Del. 193, 167 A.2d 67 (1960) en donde no hubo un consentimiento oral ni escrito por las partes para extender el lapso en que se emitiría el laudo y el tribunal no dirimió si la parte renunció al referido término; <u>Danbury Rubber Co. v. United Rubber, Cork, etc.</u>, 145 Conn. 53, 138 A.2d 783 (1958); <u>International Broth. of Teamsters, etc. v. Saphiro</u>, 138 Conn. 57, 82 A.2d 345 (1951).

[56] Véanse, D. Helfeld, <u>La Jurisprudencia Creadora: Factor Determinante en el Desarrollo del Derecho de Arbitraje en Puerto Rico</u>, 70 Rev. Jur. U.P.R. 1, 55 (2001); Art. 1 de la Ley de Arbitraje, 32 L.P.R.A. § 3201.

[57] Véase, Art. 22 de la Ley de Arbitraje, *supra.*

determinado periodo.[58] El legislador no impuso un término fijo para que el laudo fuera emitido. Así las cosas, el propósito de establecer un término aplicable, salvo pacto en contrario, para emitir el laudo consiste en la solución rápida de las controversias sometidas a arbitraje.[59]

Una vez las partes acuerdan establecer un término para emitir el laudo, éste no puede ser alterado por el árbitro. Sin embargo, nada impide que las partes puedan acordar extender, y renunciar o prescindir el término dispuesto para pronunciar el decreto. M. Domke, Domke on Commercial Arbitration: The Law and Practice of Commercial Arbitration, 3ra ed., Minnesota Ed., West Thomson, 2009, Vol. I, § 34:1, a las págs. 1-5.

Ahora bien, el efecto de que el árbitro se exceda del periodo conferido para emitir el laudo es un asunto que nos corresponde atender. Como regla general, la facultad de un árbitro para emitir un laudo está limitada por el tiempo que las partes le concedieron para así hacerlo, por lo que transcurrido dicho término el decreto es nulo o no

---

[58]En el ámbito obrero-patronal, la Ley de Relaciones del Trabajo no establece un término fijo para rendir el laudo de arbitraje, por lo que las partes pueden convenir el mismo. El término de adjudicación puede ser prorrogado tácitamente. Véase, Junta de Rel. Trabajo v. Corona Brewing Corp., 83 D.P.R. 40 (1961).

[59]Se entiende que el término para emitir el laudo comienza a decursar cuando toda la evidencia y argumentaciones de las partes han sido recibidas o cuando los memorandos han sido presentados. Véanse, Elkouri & Elkouri, How Arbitration Works, 5th ed., Washington D.C., The Bureau of National Affairs, 1997, págs. 379-380; Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551 (2d Cir. 1985).

puede ser ejecutado. Véanse: <u>Rosario v. Carrasquillo</u>, 451 N.Y.S.2d 776, 88 A.D. 2d 874 (1982); <u>General Metals Corp. v. Precision Lodge 1600 of Intern. Ass'n of Machinists, AFL-CIO</u>, 183 Cal. App. 2d 586, Cal. Rptr. 910 (1960); <u>Public Utility Const. v. Gas Appliance Workers of State of N.J. Local No. 274 v. Public Service Elec. & Gas Co.</u>, 35 N.J. Super. 414, 114 A.2d 443 (App. Div. 1955); <u>Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees v. Norfolk Southern Ry. Co.</u>, 143 F.2d 1015, 154 A.L.R. 1385(C.C.A. 4th Cir. 1944); <u>Goerke Kirch Co. v. Goerke Kirch Holding Co.</u>, 118 N.J. Eq. 1, 176 A. 902 (1935).

Cabe señalar, sin embargo, que la nulidad del decreto no es automática y un examen de la jurisprudencia federal revela que en muy pocas situaciones se ha declarado la nulidad del laudo.[60] En innumerables ocasiones se han convalidado los procesos de arbitraje aun cuando se haya excedido el término para emitir los mismos. Domke, *supra;* Elkouri & Elkouri, <u>How Arbitration Works</u>, 5th ed., Wahington D.C., The Bureau of National Affairs, 1997, págs. 380-381. Además, véanse, A. E. Korpela, <u>"Construction and Effect of Contractual or Statutory Provisions Fixing Time Within Which Arbitration Award Must Be Made"</u>, 56 ALR 3d 815 (1974).

---

[60]Ello resulta cónsono con la política pública de fomentar el arbitraje para la resolución de disputas y toda duda sobre éste debe resolverse a su favor. Véase, <u>VDE Corporation v. F & R Contrators</u>, res. 15 octubre de 2010, 2010 T.S.P.R. 210, 180 D.P.R.____.

La jurisprudencia examinada demuestra varias situaciones en las que se ha validado la decisión de un panel de arbitraje transcurrido el término para ello. A modo de ejemplo, se han sostenido laudos de arbitraje al concluir que dicho plazo es uno directivo en ausencia de un lenguaje claro a los efectos de la naturaleza esencial del mismo. Hasbro, Inc. v. Catalyst USA, Inc., 367 F.3d 689 (2004). Asimismo, no procede la revocación cuando se determina que las partes renunciaron al lapso estipulado ya sea por un acuerdo expreso o un consentimiento implícito derivado de su conducta. Board of Educ. Unified School Dist. No. 215 v. L.R. Foy Constr. Co., Inc., 697 P.2d 456, 237 Kan. 1 (1985); M.B. Guran Co. v. Amsdell, 459 N.E.2d 581 (1983); Local Union 560, International Brotherhood of Teamsters v. Anchor Motor Freight, Inc., 415 F.2d 220 (1969); Librascope, Inc. v. Wymer, 189 Cal. App. 2d 71, 10 Cal. Rptr. 795 (1961); Nathan v. United Jewish Center of Danbury, Inc., 20 Conn. Supp. 183, 129 A.2d 514 (1955). De igual forma, un laudo no será anulado cuando el reclamo de la parte perdidosa fue posterior a que el decreto fue rendido. Damrow v. Murdoch, 739 N.W.2d 229, 15 Neb. App. 920 (2007); Darin & Armstrong, Inc. v. Monte Costella, Inc., 542 So.2d 1053 (1989); West Rock Lodge No. 2120, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Geometric Tool Co., etc., 406 F.2d. 284 (2do Cir. 1968); Rexburg Inv. Co. v. Dahle & Eccles Const. Co., 36 Idaho 552, 211 P 552 (1922). Además, se han

sostenido laudos en los cuales la dilación al emitir los mismos no constituyó una situación perjudicial a las partes. Sopko v. Clear Channel Satellite Services, Inc., 151 P.3d 663 (2006); Jones v. Progressive Cas. Ins. Co., 655 N.Y.S. 2d 74 (1997).[61]

La postura asumida en la esfera federal es cónsona con las Reglas establecidas por la American Arbitration Association (AAA) la cual funge como la agencia líder en la administración de los convenios de arbitraje tanto laborales como comerciales. La AAA emite unas reglas que son revisadas periódicamente y que forman la base de los procedimientos de arbitraje, incluyendo la conducta de las partes y los árbitros. Las partes pueden convenir en su acuerdo para arbitrar que las reglas emitidas por la AAA apliquen a la disputa entre éstas. Véase, Domke, op.cit., Vol. 1, § 4:2.[62]

Específicamente, y en lo pertinente, la AAA dispone que el laudo debe ser emitido sin demora en un término no mayor de treinta (30) días calendarios desde que culminen los argumentos finales, o del último día en que las partes

---

[61]Véanse, además, New York Merchants Protective Co., Inc. v. United Textiles, Inc., 879 N.Y.S.2d 693 (2009); Anderson v. Nichols, 359 S.E.2d 117 (1987);Diversified Assembly, Inc. v. RA-LIN & Associates, 368 S.E.2d 786, 186 Ga. App. 904 (1988); Brandon v. Hines, 439 A.2d 496 (1981); Globe v. Central Mut. Ins. Co., 260 N.E.2d 860, 56 A.L.R. 809, 125 Ill. App. 2d 298 (2d Dist. 1970).

[62]Conforme al *Takeover Agreement* de las partes en el caso ante nuestra consideración, éstas acordaron que las reglas de la AAA aplicarían para suplementar aquellas áreas de controversia o duda.

sometan sus declaraciones y evidencia final, a menos que las partes hayan establecido un periodo distinto o que la ley así lo disponga.[63] A tono con ello, la AAA reconoce que las partes pueden acordar un término distinto; el cual puede ser modificado por consentimiento de éstas.[64] Además, y con el propósito de conceder viabilidad y finalidad al laudo de arbitraje, la AAA estimó conveniente implantar un mecanismo de renuncia a los referidos términos cuando quien, luego de conocer que no se ha cumplido con el procedimiento, continua con el arbitraje sin presentar su objeción por escrito.[65]

---

[63]Véase, Regla 43 de la American Arbitration Association (Construction Industry Arbitration Rules). La cual indica que:

> The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 calendar days from the date of closing the hearing, or, if oral hearings have been waived, from the due date set for receipt of the parties' final statements and proofs.

[64]Véase Regla 40 de la AAA, *supra.* En lo pertinente:

> (a) The parties may modify any period of time by mutual agreement, provided that any such modification that adversely affects the efficient resolution of the dispute is subject to review and approval by the arbitrator….

[65]Véase, Regla 39 de la AAA, *supra.* La cual establece que:

> Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied with and who fails to state an objection in writing shall be deemed to have waived the right to object.

A la luz de lo anterior, consideramos que la política pública en nuestra jurisdicción ha sido reiterada en propiciar la resolución de disputas por métodos alternos, entre éstos, el arbitraje. Constantemente, no hemos vacilado en resolver las pugnas de si procede el arbitraje a favor de éste. Consistentemente advertimos que el arbitraje es una figura inherentemente contractual, por lo que las partes están obligadas a cumplir con lo expresamente pactado. Dicha obligación se funda en el principio de la buena fe, el cual exige no defraudar la confianza que el otro ha puesto en una promesa o conducta.[66] El referido principio de buena fe exige la prohibición de actuar contra los propios actos.[67] En el campo del Derecho no podemos dar albergue a la conducta contradictoria que mina la confianza depositada en una u otra parte.[68]

Ante ese cuadro, resolvemos que el Art. 14 de la Ley de Arbitraje, *supra,* no aplica en aquellos casos en los que las partes han establecido un término para emitir un laudo de arbitraje en el acuerdo escrito de sumisión. Las partes tienen la libertad de establecer el tiempo que consideren prudente para la disposición de la controversia

---

[66]Véanse, Art. 1210 del Código Civil, 31 L.P.R.A. § 3375. <u>Unisys Puerto Rico, Inc. v. Ramallo Brothers Printing, Inc.</u>, 128 D.P.R. 842, 852 (1991). Véase, L. Díez-Picazo, Fundamentos de Derecho Civil Patrimonial, 2da ed., Madrid, Ed. Tecnos, 1983, Vol. I, Cap. IV, pág. 99.

[67]Véase, Art. 7 del Código Civil, 31 L.P.R.A. § 7.

[68]Véase, <u>Int. General Electric v. Concret Builders</u>, 104 D.P.R. 871, 876, 877 (1976).

a arbitrar. Dicho término podrá ser prorrogado por acuerdo mutuo el que preferiblemente debe constar por escrito, y ante la falta de dicho arreglo, se examinará la conducta de las partes a los fines de determinar si hubo una renuncia al mismo. Por tanto, un laudo de arbitraje emitido en exceso al término estipulado por las partes no es automáticamente nulo. Será el deber de los tribunales examinar si el plazo dispuesto era esencial para resolver la disputa, si las partes prorrogaron el mismo expresa o implícitamente, o si éstas renunciaron a un reclamo en cuanto a éste por la conducta desplegada y el momento en que se objetó la actuación de los árbitros. Tal análisis es cónsono con nuestra política pública a favor de los métodos de resolución de disputas y la norma jurídica en cuanto a que la voluntad de las partes se deriva de sus actos. Resolver de otra forma atenta contra los criterios de política pública que enmarcan las relaciones en nuestra sociedad y atenta a la solución justa, rápida y económica de los procesos.

VI

De los hechos antes expuestos, surge claramente que las partes acordaron en el *Takeover Agreement* que el laudo sería emitido a los treinta (30) días cuando culminaran las vistas. De igual forma, las partes establecieron que el acuerdo de sumisión no podía ser alterado o enmendado excepto por escrito. Asimismo, establecieron que en caso de duda aplicarían las Reglas acogidas por la AAA.

Conforme a los hechos relatados, el proceso de vistas culminó en diciembre de 2001, los memorandos de las partes fueron presentados al 1ro de abril de 2002 y el 15 de mayo de 2002 el panel de árbitros emitió su laudo.

Al examinar detenidamente el expediente, no surge que las partes hayan objetado dicho proceder antes de emitido el laudo. Mucho menos éstas alegaron que el plazo dispuesto era esencial para la resolución de la controversia ni ello se desprende del lenguaje del acuerdo entre éstas. Tampoco aflora que las partes hayan cumplido cabalmente con que las enmiendas o modificaciones a los términos procesales establecidos en el *Takeover Agreement* fueren realizadas por escrito. Por el contrario, los hechos demuestran múltiples instancias en las que existía un entendido para modificar el acuerdo sin que ello fuera objeto de estipulación escrita. A modo de ejemplo, en origen la controversia no fue presentada ni dirimida dentro del tiempo estipulado, y ante el planteamiento de falta de jurisdicción de los árbitros, el Tribunal de Primera Instancia al examinar la conducta de dicha parte promoviendo el procedimiento de arbitraje durante dos años, determinó que el panel de árbitros estaba facultado para dirimir la controversia. Además, y ante la complejidad de la polémica, las partes extendieron el tiempo para presentar la prueba de un máximo de doce (12) vistas de arbitrajes, según surge del *Takeover Agreement,*[69]

---

[69]Véanse, las páginas 4 y 5 de esta Opinión.

hasta el grado que se celebraron cincuenta y cinco (55) vistas ante el referido panel de arbitraje y acordaron extender el tiempo para presentar sus respectivos memorandos. Del comportamiento de las partes trasciende que éstas por consentimiento mutuo modificaron, en varias ocasiones, los términos contractuales ante la complejidad de las argumentaciones presentadas al panel de árbitros.

Con relación al término para que se emitiera el laudo, y conforme aducen todas las partes, hubo un acuerdo verbal entre éstas y ante el panel de árbitros para prorrogar el término a cuarenta y cinco (45) días desde que se presentara el último memorando. La razón para ello consistió en el volumen de evidencia y datos que eran necesarios para emitir el laudo. Ello fue recogido e informado al Tribunal de Primera Instancia mediante moción del 9 de mayo de 2002.[70] En dicho escrito surge claramente el compromiso de todas las partes para extender el término para emitir el decreto al 16 de mayo de 2002. Ninguna de las partes se opuso a lo informado ni levantó una voz de alerta a los efectos de que ello debía constar por escrito.

Contrario a la confianza depositada, a tres meses de emitido el laudo en su contra, Constructora Estelar y Seaboard Surety impugnan el mismo, entre otras razones, cuestionando la facultad del panel de árbitros para emitir éste luego de transcurrido los treinta (30) días

---

[70]Véase nota al calce núm. 15.

originalmente acordados en el *Takeover Agreement*. Al así hacerlo, presentaron una postura incompatible con la conducta desplegada y renunciaron a cualquier reclamo sobre este particular a no presentar oportunamente una objeción a la potestad de los árbitros para emitir el laudo el 15 de mayo de 2002.

De acuerdo con la norma jurídica establecida, no albergamos duda de que Constructora Estelar y Seaboard Surety renunciaron a cualquier reclamo de que el consentimiento verbal para extender el término para emitir el laudo tenía que constar por escrito. Más aún dimitieron de toda petición en cuanto a que la opinión de los árbitros fuera emitida como originalmente fue pactada. Advertimos que éstas acordaron que en caso de duda aplicarían las reglas de la AAA, las cuales establecen que si la parte no objetó a tiempo renunció a su reclamo. Asimismo, resulta claro que todas las partes acordaron extender el referido plazo. De igual forma, no existe un reclamo de que el término era esencial para que se emitiera el laudo. Nótese que el proceso de arbitraje duró por varios años. Mucho menos, Constructora Estelar y Seaboard Surety objetaron oportunamente. Las actuaciones de todas las partes claramente manifiestan que el término fue extendido por quince (15) días adicionales para que el panel de arbitraje emitiera su decreto. Ello consta por escrito en la moción suscrita por Constructora Estelar el

9 de mayo de 2002 y está avalada por la conducta desplegada por todas las partes.

En definitiva, el término para emitir el laudo fue válidamente prorrogado y éste fue pronunciado dentro del referido periodo, por lo que el panel de árbitros no se excedió en su facultad al así hacerlo.

Por tanto, y a la luz de lo antes expuesto, erró el Tribunal de Apelaciones al aplicar el Art. 14 de la Ley de Arbitraje, *supra,* a la controversia suscitada entre las partes y al determinar que debido a ello el laudo era nulo.

                                    VII

Por último, atendemos los planteamientos de la AEP y la AVP relacionados con la facultad del Tribunal de Primera Instancia para revocar el laudo de arbitraje.

La AEP y la AVP cuestionan la autoridad del foro primario para sustituir las determinaciones de hechos realizadas por el panel de árbitros. En cuanto a ello, sostienen que habiéndose acordado que el laudo sería final para todas las partes, el Tribunal de Primera Instancia no podía modificar las determinaciones de hechos del panel de arbitraje y sólo le correspondía determinar si éste se ajustó al derecho vigente a partir de los hechos determinados. En la alternativa, la AEP y la AVP plantean que el Tribunal de Primera Instancia debía conceder deferencia y respeto a las conclusiones de hechos del panel de árbitros.

Un examen del *Takeover Agreement* establece expresamente que las partes acordaron que el laudo de arbitraje sería emitido conforme a derecho. El análisis de la doctrina antes enunciada reitera que en estas circunstancias los tribunales pueden revisar los méritos del laudo. Asimismo, el Tribunal de Primera Instancia puede auscultar si procede la revocación del laudo a tenor con el Art. 22 de la Ley de Arbitraje, *supra,* es decir, si hubo fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelve todos los asuntos en controversia.

Evidentemente, al haberse pactado que el dictamen fuera conforme a derecho, y como parte del debido proceso de ley, su revisión incluye que las determinaciones de hechos establecidas por el panel de árbitros estén apoyadas en la prueba presentada. Éstas serán revisadas desde el amplio marco de deferencia que aplica a las determinaciones realizadas por el foro que atendió y aquilató la misma por primera vez. Por tanto, en ausencia de pasión, arbitrariedad o irrazonabilidad, los tribunales no intervendrán con las conclusiones de hecho realizadas por los árbitros. Sin embargo, ello no significa que los tribunales estén vedados de cambiar o modificar las referidas determinaciones si al examinar las mismas éstas son arbitrarias, irrazonables o no están apoyadas en la prueba. Claro está, ello no conlleva que el Tribunal de

Primera Instancia pueda sustituir las determinaciones realizadas por los árbitros para imponer su criterio.

A base de lo anterior, procede que el Tribunal de Apelaciones considere si el Tribunal de Primera Instancia actuó correctamente al modificar las determinaciones de hechos emitidas por el panel de árbitros. De ello ser así procede confirmar al foro primario. En cuyo caso, distinto a lo sostenido por la AVP y la AEP, sería un ejercicio fútil devolver la controversia ante el panel de árbitros ya que éste solamente tenía autoridad para determinar si la declaración de incumplimiento emitida por dichas entidades gubernamentales fue válida. Por ende, de juzgar que procede confirmar al Tribunal de Primera Instancia, no hay razón para remitir el asunto ante arbitraje nuevamente.

Por el contrario, si al evaluar las actuaciones del foro primario a la luz de los postulados de deferencia discutidos en el acápite IV de esta Opinión, el Foro Intermedio concluye que el Tribunal de Primera Instancia erró al modificar las determinaciones de hechos emitidas por el panel de árbitros, ameritaría revocarlo, y en consecuencia, dejar en pleno vigor el laudo de arbitraje.

VIII

Por todo lo antes expuesto, se revoca al Tribunal de Apelaciones. En su consecuencia, se devuelve el caso a dicho foro intermedio para que, con prioridad, proceda de conformidad a lo aquí dispuesto.

Se dictará Sentencia de conformidad.


                                    LUIS F. ESTRELLA MARTÍNEZ
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Constructora Estelar, S.E. y Otros<br><br>Recurridos<br><br>v.<br><br>Autoridad de Edificios Públicos y Otros<br><br>Peticionarios | CC-2009-259<br><br>Cons. | Certiorari |
| Constructora Estelar<br><br>Peticionario<br><br>v.<br><br>Autoridad de Edificios Públicos y Otros<br><br>Recurridos | CC-2009-267 | |

SENTENCIA

San Juan, Puerto Rico, a 28 de septiembre de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca al Tribunal de Apelaciones. En su consecuencia, se devuelve el caso a dicho foro intermedio para que, con prioridad, proceda de conformidad a lo aquí dispuesto.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Martínez Torres vota conforme aunque no avala todo lo manifestado en los casos U.I.T.I.C.E. v. C.E.A.T., 147 D.P.R. 522, 528 (1999) y Caro v. Cardona, 158 D.P.R. 592 (2003). No obstante, en el caso que nos ocupa, ese era el estado de derecho vigente al momento de solicitar revisión en el Tribunal de Apelaciones y las partes confiaron en él. La Jueza Asociada señora Pabón Charneco se une a las expresiones del Juez Asociado señor Martínez Torres. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo